**LOBEL WEILAND GOLDEN FRIEDMAN LLP**
Jeffrey I. Golden, State Bar No. 133040
jgolden@lwgfllp.com
Reem J. Bello, State Bar No. 198840
rbello@lwgfllp.com
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Telephone    714-966-1000
Facsimile     714-966-1002

Counsel for Chapter 7 Trustee
Howard B. Grobstein

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| In re | Case No. 6:17-bk-14622-WJ |
| HEATH CARR, | Chapter 7 |
| Debtor. | **COMPLAINT:** |
| HOWARD B. GROBSTEIN, Chapter 7 Trustee, | **(1) TO AVOID AND RECOVER FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. §§ 548(a)(1)(A) AND 550;** |
| Plaintiff, | **(2) TO AVOID AND RECOVER FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. §§ 548(a)(1)(B) AND 550;** |
| v. | **(3) TO AVOID AND RECOVER PREFERENTIAL TRANSFER PURSUANT TO 11 U.S.C. §§ 547(b) AND 550;** |
| JAMIE L. GBUR, | **(4) TO PRESERVE TRANSFER PURSUANT TO 11 U.S.C. § 551;** |
| Defendant. | **(5) FOR DECLARATORY RELIEF;** |
| | **(6) FOR IMPOSITION OF RESULTING TRUST;** |
| | **(7) FOR IMPOSITION OF CONSTRUCTIVE TRUST; AND** |
| | **(8) FOR ATTORNEYS' FEES AND COSTS** |

**TO THE DEFENDANT AND HER COUNSEL:**

Howard B. Grobstein, the duly appointed, qualified and acting chapter 7 trustee

(the "Trustee") for the bankruptcy estate (the "Estate") of Heath Carr (the "Debtor"),

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  hereby files this complaint:  (1) to Avoid and Recover Fraudulent Transfer Pursuant to

2  11 U.S.C. §§ 548(a)(1)(A) and 550; (2) to Avoid and Recover Fraudulent Transfer

3  Pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550; (3) to Avoid and Recover Preferential

4  Transfer Pursuant to 11 U.S.C. §§ 548(b) and 550; (4) to Preserve Transfer Pursuant to

5  11 U.S.C. § 551; (5) for Declaratory Relief; (6) for Imposition of Resulting Trust; (7) for

6  Imposition of Constructive Trust; and (8) for Attorneys' Fees and Costs (the "Complaint")

7  against Jamie L. Gbur, and alleges that:

8                          <u>STATEMENT OF JURISDICTION AND VENUE</u>

9        1.    The Bankruptcy Court has jurisdiction over this adversary proceeding

10 pursuant to 28 U.S.C. §1334 and 11 U.S.C. §§ 105, 323, 547, 548, 550 and 551.  This

11 adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E)

12 and (O).

13       2.    The Bankruptcy Court has constitutional jurisdiction to enter a final judgment

14 in this adversary proceeding.

15       3.    Venue properly lies in this judicial district in that the civil proceeding arises

16 under title 11 of the United States Code as provided in 28 U.S.C. § 1409.

17       4.    This adversary proceeding arises out of and relates to the case entitled *In re*

18 *Heath Carr,* Case No. 6:17-bk-14622-WJ, filed on June 1, 2017, and currently pending in

19 the United States Bankruptcy Court, Central District of California, Riverside Division.

20       5.    This is an adversary proceeding for avoidance and recovery of fraudulent

21 transfer pursuant to 11 U.S.C. §§ 548(a)(1)(A, (B), and 550, for preservation of transfer

22 pursuant to § 551, for declaratory relief, for imposition of resulting trust, for imposition of

23 constructive trust, for declaratory relief, and for attorneys' fees and costs.

24                              <u>STATEMENT OF STANDING</u>

25       6.    Debtor filed his chapter 7 bankruptcy petition on June 1, 2017 (the "Petition

26 Date").

27       7.    The Trustee was subsequently appointed as the duly qualified and acting

28 chapter 7 trustee of Debtor's bankruptcy estate (the "Estate").

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-866-1000  Fax 714-866-1002

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-866-1000   Fax 714-866-1002

8.    The Trustee has standing to bring this action pursuant to 11 U.S.C. §§ 105, 323, 547, 548, 550 and 551.

## PARTIES TO THE ACTION

9.    Plaintiff is the duly appointed, qualified and acting chapter 7 trustee for Debtor's bankruptcy Estate.  This action is brought by the Trustee in his representative capacity only.

10.    The Trustee is informed, believes, and alleges that Jamie L. Gbur ("Defendant") is an individual residing at 4930 Saddlewood Place, Rancho Cucamonga, California 91737.

11.    The Trustee is informed, believes, and alleges that the Defendant is the mother of Debtor's minor children.

## GENERAL ALLEGATIONS

12.    The Trustee incorporates each and every allegation contained in paragraphs 1 through 11 as though fully set forth herein.

13.    The Trustee is informed, believes, and alleges that on April 20, 2017, Debtor filed a voluntary petition under chapter 7, case no. 6:17-bk-13277-WJ (the "Prior Bankruptcy Case"), which was closed by order entered on May 10, 2017, for failure to file schedules and statements.

14.    The Trustee is informed, believes, and alleges that in Schedule A of Debtors' bankruptcy schedules filed on June 1, 2017 (the "Schedules") in the instant case, Debtor listed the real property located at 1184 Teton Drive, Big Bear Lake, California 92315 (the "Residence"), Assessor's Parcel No.: 0310-523-13-0-000, as his primary residence and listed the current value of his interest in the Residence in the amount of $320,000 [Dkt. No. 1].

15.    The Trustee is informed, believes, and alleges that in Schedule C, Debtor claimed an exemption in the Residence in the amount of $100,000 pursuant to C.C.P. § 704.730, and indicated that the value of the portion of the Residence he owns is $320,000 [Dkt. No. 1].

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-866-1000 · Fax 714-866-1002

16.    The Trustee is informed, believes, and alleges that in Schedule D, Debtor listed a secured claim against the Residence in the form of a mortgage from Guild Mortgage Company in the amount of $213,934 [Dkt. No. 1].

17.    The Trustee is informed, believes, and alleges that Debtor listed no other real property in his Schedule A/B [Dkt. No. 1].

18.    The Trustee is informed, believes, and alleges that in Schedule D, Debtor listed a secured claim against the real property located at 4930 Saddlewood Place, Rancho Cucamonga, California 91737 (the "Saddlewood Property"), Assessor's Parcel No. 1074-461-10, in the form of a mortgage from Nationstar Mortgage in the amount of $556,760.00 [Dkt. No. 1].

19.    The Trustee is informed and believes, and on that basis alleges, that Debtor acquired title to the Saddlewood Property on or about May 27, 2005.  *See* Grant Deed information attached as Exhibit "1."

20.    The Grant Deed was recorded on May 27, 2005.  *See* Exhibit "1."

21.    The Trustee is informed, believes, and alleges that on or about May 27, 2005, Debtor executed a Deed of Trust against the Saddlewood Property in the amount of $696,000 in favor of America's Wholesale Lender (the "First Deed of Trust").  *See* First Deed of Trust attached as Exhibit "2."

22.    The First Deed of Trust was recorded on May 27, 2005, as document no. 2005-0381066.  *See* Exhibit "2."

23.    The Trustee is informed, believes, and alleges that on or about August 25, 2006, Debtor executed a Deed of Trust against the Saddlewood Property in the amount of $150,000 in favor of TMG Financial Services Inc., dba The Mortgage Guild (the "Second Deed of Trust").  *See* Second Deed of Trust attached as Exhibit "3."

24.    The Second Deed of Trust was recorded on August 25, 2006, as document no. 2006-0583487.  *See* Exhibit "3."

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 · Fax 714-966-1002

25.    The Trustee is informed, believes and alleges that less than 60 days prior to the Petition Date, on or about April 19, 2017, Debtor, an unmarried man, executed a quitclaim deed (the "Quitclaim Deed").  *See* Quitclaim Deed attached as Exhibit "4."

26.    Debtor's address as shown in the Quitclaim Deed is the Saddlewood Property address.  *See* Exhibit "4."

27.    The Quitclaim Deed was recorded on April 19, 2017, less than 60 days prior to the Petition Date, as document no. 2017-0162699.  *See* Exhibit "4."

28.    The Quitclaim Deed transferred title to the Saddlewood Property solely to the Defendant, an unmarried woman, as her sole property (the "Transfer").  *See* Exhibit "4."

29.    Defendant paid no consideration for the Transfer.

30.    The Trustee is informed and believes and on that basis alleges that title to the Saddlewood Property is held by the Defendant, and that the Defendant resides at the Saddlewood Property.

31.    The Saddlewood Property is property of the Estate pursuant to 11 U.S.C. Section 541.

32.    The Trustee is informed, believes, and alleges that in April 2017 Debtor transferred to Defendant:  (a) his ownership of Connagro Consulting, Inc., which owned a bank account with $50,000.00; (b) a Cannon Trading account with a value of $20,000.00; and (c) $30,000.00 from a Chase bank account, for a total of $100,000.00 to Defendant (the "Cash Transfers").  *See* page 5 of Debtor's Statement of Financial Affairs attached as Exhibit "5."  The Transfer and the Cash Transfers are hereinafter referred to as the "Transfers."

33.    The Trustee is informed, believes, and alleges that the Defendant is the mother of Debtor's minor children.

34.    The Trustee is informed, believes, and alleges that the Saddlewood Property is worth approximately $925,000.

35.     The Trustee is informed, believes, and alleges that in his Schedule E/F Debtor listed the Defendant as the holder of an unsecured priority claim in the amount of $217,529 on account of a child support obligation (the "Alleged Child Support Obligation").

36.     The Trustee is informed, believes, and alleges that there is no evidence of the Alleged Child Support Obligation.

## FIRST CLAIM FOR RELIEF

### (To Avoid Transfers and Recover Intentionally Fraudulently Transferred Property Under 11 U.S.C. §§ 548(a)(1)(A) and 550)

37.     Plaintiff incorporates each and every allegation contained in paragraphs 1 through 36, inclusive, as though fully set forth herein.

38.     The Trustee is informed, believes, and alleges that the Transfers occurred during the one-year period immediately preceding the Petition Date.

39.     The Trustee is informed, believes, and alleges that the Transfers were made with the actual intent to hinder, delay or defraud Debtor's creditors.

40.     The Trustee is informed, believes, and alleges that creditors existed at the time of the Transfers that remained unpaid as of the Petition Date.

41.     The Trustee is informed, believes, and alleges that Debtor made the Transfers to or for the benefit of the Defendant.

42.     The Trustee is informed, believes, and alleges that Debtor received no consideration or inadequate consideration from the Defendant for the Transfers.

43.     The Trustee is informed, believes, and alleges that there is no evidence of any obligation due and owing to the Defendant at the time of the Transfers, as Debtor alleges.

44.     The Trustee is informed, believes, and alleges that Debtor was insolvent at the time of the Transfers and/or was rendered insolvent by virtue of the Transfers.

45.     The Trustee is informed, believes, and alleges that the Defendant is an insider of Debtor.

46.     The Trustee is informed, believes, and alleges that the Defendant did not take the Transfers in good faith.

47.     By reason of the foregoing, the Transfers are avoidable, Plaintiff is entitled to set aside the Transfers pursuant to 11 U.S.C. § 548(a)(1)(A), and Plaintiff is entitled to recover the Transfers or the value of the Transfers for the benefit of the Estate pursuant to 11 U.S.C. § 550.

## SECOND CLAIM FOR RELIEF

**(To Avoid Transfers and Recover Constructively Fraudulently Transferred Property Under 11 U.S.C. §§ 548(a)(1)(B) and 550)**

48.     Plaintiff incorporates each and every allegation contained in paragraphs 1 through 47, inclusive, as though fully set forth herein.

49.     The Trustee is informed, believes, and alleges that at the time of the Transfers, Debtor was engaged in or was about to engage in a business or a transaction for which Debtor's remaining assets were unreasonably small in relation to the business or transaction.

50.     The Trustee is informed, believes, and alleges that at the time of the Transfers, Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts beyond his ability to pay as they became due.

51.     The Trustee is informed, believes, and alleges that the Transfers were made to and for the benefit of the Defendant.

52.     The Trustee is informed, believes, and alleges that Debtor did not receive reasonably equivalent value for making the Transfers.

53.     The Trustee is informed, believes, and alleges that Debtor did not make the Transfers in good faith.

54.     The Trustee is informed, believes, and alleges that the Defendant did not take the Transfers for reasonably equivalent value.

55.     The Trustee is informed, believes, and alleges that the Defendant did not take the Transfers in good faith.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

56.    By reason of the foregoing, the Transfers are avoidable, Plaintiff is entitled to set aside the Transfers pursuant to 11 U.S.C. § 548(a)(1)(B), and Plaintiff is entitled to recover the Transfers or the value of the Transfers for the benefit of the Estate pursuant to 11 U.S.C. § 550.

## THIRD CLAIM FOR RELIEF

**(To Avoid and Recover Preferential Transfer Pursuant to 11 U.S.C. §§ 547 and 550)**

57.    Plaintiff incorporates each and every allegation contained in paragraphs 1 through 56, inclusive, as though fully set forth herein.

58.    The Trustee is informed, believes, and alleges that the Transfer was a transfer of an interest of Debtor in property.

59.    The Trustee is informed, believes, and alleges that the Transfer occurred less than 60 days prior to the Petition Date.

60.    The Trustee is informed, believes, and alleges that the Transfer was made to or for the benefit of Defendant.

61.    The Trustee is informed, believes, and alleges that at the time the Transfer was made to Defendant on account of an alleged antecedent debt allegedly owed by Debtor before the Transfer was made.

62.    The Trustee is informed, believes, and alleges that the Transfer was made while Debtor was insolvent.

63.    The Trustee is informed, believes, and alleges that by reason of the Transfer, Defendant obtained more than it would have received in the chapter 7 case if the Transfer had not been made.

64.    By reason of the foregoing, the Transfer is avoidable as a preferential transfer pursuant to 11 U.S.C. § 547(b).

65.    The Trustee is entitled to set aside the Transfer pursuant to 11 U.S.C. § 547(b) and to recover the Transfer or the equivalent value of the Transfer from Defendant for the benefit of the Estate pursuant to 11 U.S.C. § 550.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92826
Tel 714-966-1000   Fax 714-966-1002

## FOURTH CLAIM FOR RELIEF

### (For Declaratory Relief)

66.     Plaintiff incorporates each and every allegation contained in paragraphs 1 through 65, inclusive, as though fully set forth herein.

67.     Plaintiff believes that the Saddlewood Property is property of the Estate and Plaintiff seeks a declaration of rights that the Saddlewood Property is property of the Estate.

68.     Plaintiff further seeks a declaration that the Estate holds a100% undivided fee simple interest in the Saddlewood Property and that the Defendant has and had no interest in the Saddlewood Property.

69.     Plaintiff further seeks a declaration that the Saddlewood Property was and is held in constructive trust as of the date of the Petition Date by the Defendant for the benefit of the Estate.

70.     Plaintiff further seeks a declaration of rights that the Defendant held and holds legal title to the Saddlewood Property in a resulting trust for the benefit of the Estate.

## FIFTH CLAIM FOR RELIEF

### (To Preserve Transfer for the Benefit of the Estate
### Pursuant to 11 U.S.C. § 551)

71.     Plaintiff incorporates each and every allegation contained in paragraphs 1 through 70, inclusive, as though fully set forth herein.

72.     Pursuant to 11 U.S.C. § 551, the Transfers are preserved for the benefit of the Estate as the Transfers are avoidable under 11 U.S.C. §§ 547, 548 and 550 as set forth above.

## SIXTH CLAIM FOR RELIEF

### (For Imposition of Resulting Trust)

73.    Plaintiff incorporates each and every allegation contained in paragraphs 1 through 72, inclusive, as though fully set forth herein.

74.    The Trustee is informed and believes, and on that basis alleges, that at all times after acquisition of the Saddlewood Property, Debtor and the Defendant intended and agreed that the beneficial interest in the Saddlewood Property would be held by Debtor.  Accordingly, the Defendant held her interest in the Saddlewood Property in trust for Debtor and the Defendant currently holds her current interest in the Saddlewood Property in trust for the benefit of the Estate.

75.    By reason of the foregoing, Plaintiff is entitled to the imposition of a resulting trust on the interest of the Defendant in the Saddlewood Property and an order declaring title to the Saddlewood Property to be in the name of the Trustee for the benefit of the Estate.

## SEVENTH CLAIM FOR RELIEF

### (For Imposition of Constructive Trust)

76.    Plaintiff incorporates each and every allegation contained in paragraphs 1 through 75, inclusive, as though fully set forth herein.

77.    The Trustee is informed and believes, and on that basis alleges, that the Defendant has been unjustly enriched as a result of holding sole title in the Saddlewood Property.

78.    By reason of the foregoing, Plaintiff is entitled to the imposition of a constructive trust as of the date of the acquisition of the Saddlewood Property by the Defendant and an order declaring title to the Defendant's interest in the Saddlewood Property to be in the name of the Trustee, for the benefit of the Estate, as of the Petition Date.

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-866-1000   Fax 714-866-1002

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92826
Tel 714-966-1000 | Fax 714-966-1002

## EIGHTH CLAIM FOR RELIEF

### (For Award of Attorneys' Fees and Costs Pursuant to Rule 7008(b))

79.    Plaintiff incorporates each and every allegation contained in paragraphs 1 through 78, inclusive, as though fully set forth herein.

80.    Based on the foregoing allegations, Plaintiff is entitled to reasonable attorneys' fees and costs resulting from bringing the instant action.

**WHEREFORE**, Trustee prays that this Court enter a judgment against the Defendant as follows:

### On the First Claim for Relief

Avoiding the Transfers and declaring that the Transfers be annulled and rendered void as a fraudulent transfer and for recovery of the value of the Transfers for the benefit of the Estate.

Awarding the Trustee a money judgment against the Defendant in the amount of the Transfers.

### On the Second Claim for Relief

Avoiding the Transfers and declaring that the Transfers be annulled and rendered void as a fraudulent transfer and for recovery of the value of the Transfers for the benefit of the Estate.

Awarding the Estate a money judgment against the Defendant in the amount of the Transfers.

### On the Third Claim for Relief

Avoiding the Transfer and declaring that the Transfer be annulled and rendered void as a preferential transfer and for recovery of the value of the Transfer for the benefit of the Estate.

Awarding the Trustee a money judgment against Defendant in the amount of the Transfer.

1

2                    **On the Fourth Claim for Relief**

3        For preservation of the Transfers for the benefit of the Estate.

4                    **On the Fifth Claim for Relief**

5        For a declaration that the Saddlewood Property is property of the Estate pursuant

6    to 11 U.S.C. § 541.

7                    **On the Sixth Claim for Relief**

8        For imposition of a resulting trust on the Defendant's interest in the Saddlewood

9    Property for the benefit of the Estate.

10                   **On the Seventh Claim for Relief**

11       For imposition of a constructive trust on the Estate's interest in the Saddlewood

12   Property for the benefit of the Estate as of the date of the acquisition of the Saddlewood

13   Property and an order declaring title to the Estate's interest in the Saddlewood Property to

14   be in the name of Plaintiff, for the benefit of Debtor's Estate.

15                   **On the Eighth Claim for Relief**

16       Plaintiff be awarded his costs and attorneys' fees incurred in this action.

17                   **On all Claims for Relief**

18       1.     For Plaintiff's costs and attorneys' fees incurred in this action;

19       2.     For pre-judgment and post-judgment interest at the maximum legal rate; and

20       3.     For such other and further relief as the Court deems just and proper.

21

22                                Respectfully submitted,

23   Dated:  November 06, 2017        LOBEL WEILAND GOLDEN FRIEDMAN LLP

24

25                                By:  /s/ Reem J. Bello
                                         REEM J. BELLO
26                                       Counsel for Chapter 7 Trustee
                                         Howard B. Grobstein
27

28

Lobel Weiland Golden Friedman LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-866-1000  Fax 714-866-1002

1130540.1                         12                         COMPLAINT

# EXHIBIT 1

### Mortgage Record

| | | | |
|---|---|---|---|
| Recording Date: | 07/21/2015 | Document #: | 2015-0309484 |
| Loan Amount: | $250,000 | Loan Type: | Unknown |
| TD Due Date: | | Type of Financing: | |
| Lender Name: | US DISTRICT COURT CENTRAL | | |
| Lender Type: | Other (company or corporation) | | |
| Buyer Vesting: | CARR,HEATH | | |
| Vesting: | | | |

### Mortgage Record

| | | | |
|---|---|---|---|
| Recording Date: | 08/25/2006 | Document #: | 2006-0583487 |
| Loan Amount: | $150,000 | Loan Type: | Stand Alone Second |
| TD Due Date: | 09/01/2036 | Type of Financing: | |
| Lender Name: | TMG FINANCIAL SERVICES INC | | |
| Lender Type: | N | | |
| Buyer Vesting: | CARR,HEATH | | |
| Vesting: | | | |

### Prior Transfer

| | | | |
|---|---|---|---|
| Recording Date: | 05/27/2005 | Document #: | 2005-0381065 |
| Price: | $870,000 | Document Type: | Grant Deed |
| First TD: | $696,000 | Type of Sale: | Full-Computed from Transfer Tax |
| Lender Name: | AMERICAS WHOLESALE LENDER | | |
| Buyer Name: | CARR, HEATH | | |
| Buyer Vesting: | | | |
| Sell Name: | LEECH, KEE | | |
| City/Muni/Twp: | RANCHO CUCAMONGA | | |
| Legal: | LOT:59 CITY:RANCHO CUCAMONGA TR#:13316 MAP REF:MAP235 PG43-50 | | |

### Mortgage Record

| | | | |
|---|---|---|---|
| Recording Date: | 06/25/2004 | Document #: | 2004-0451098 |
| Loan Amount: | $581,000 | Loan Type: | Unknown |
| TD Due Date: | 07/01/2034 | Type of Financing: | FIX |
| Lender Name: | COUNTRYWIDE HOME LOANS INC | | |
| Lender Type: | Lending institution | | |
| Buyer Vesting: | LEECH,KEE | | |
| Vesting: | | | |

### Mortgage Record

| | | | |
|---|---|---|---|
| Recording Date: | 04/14/2003 | Document #: | 2003-0241880 |
| Loan Amount: | $50,000 | Loan Type: | Credit Line (Revolving) |
| TD Due Date: | | Type of Financing: | VAR |
| Lender Name: | COUNTRYWIDE HOME LOANS INC | | |
| Lender Type: | Lending institution | | |
| Buyer Vesting: | LEECH,KEE | | |
| Vesting: | | | |

### Mortgage Record

# EXHIBIT 2

Electronically Recorded in Official Records, County of San Bernardino

5/27/2005
01:42 PM
EF



**LARRY WALKER**
Auditor/Controller - Recorder

**619 Ticor Title Company**

TICOR TITLE
SAN BERNARDINO

Recording Requested By:
T. DUFFY

| Doc #: | 2005-0381066 | Titles: | 1 | Pages: 21 |
|---|---|---|---|---|



| | |
|---|---|
| Fees | 68.00 |
| Taxes | .00 |
| Other | .00 |
| PAID | 68.00 |

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
ANN EASTERBROOK

─────────────── [Space Above This Line For Recording Data] ───────────────

4378-SJ                          00010157171505005

[Escrow/Closing #]                    [Doc ID #]

# DEED OF TRUST

MIN 1000157-0005167657-1

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated MAY 09, 2005          , together with all Riders to this document.
**(B) "Borrower"** is
HEATH CARR, A SINGLE MAN

---

**CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16

Initials: _____

**-6A(CA)** (0207)    **CHL (09/02)(d)**    VMP MORTGAGE FORMS - (800)521-7291

**Form 3005  1/01**

CONV/VA

\* 2 3 9 9 1 \*

\* 1 0 1 5 7 1 7 1 5 0 0 0 0 0 1 0 0 6 A \*

DOC ID #: 00010157171505005

Borrower's address is
6785 INYO PL., RANCHO CUCAMONGA, CA 91701
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
P.O. Box 10219, Van Nuys, CA 91410-0219
**(D) "Trustee"** is
CTC REAL ESTATE SERVICES
400 COUNTRYWIDE WAY, MSN SV-88, SIMI VALLEY, CA 93065 , ,
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated  MAY 09, 2005          . The Note states that Borrower owes Lender
SIX HUNDRED NINETY SIX THOUSAND and 00/100

Dollars (U.S. $ 696,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  JUNE 01, 2035      .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider              [ ] Second Home Rider
[ ] Balloon Rider            [ ] Planned Unit Development Rider  [ ] 1-4 Family Rider
[ ] VA Rider                 [ ] Biweekly Payment Rider          [X] Other(s) [specify]
                                                                  0

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

Initials: _____

VMP -6A(CA) (0207)        CHL (09/02)            Page 2 of 16                    **Form 3005 1/01**

EXHIBIT 2    PAGE 2

DOC ID #: 00010157171505005

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| COUNTY | of | SAN BERNARDINO | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

Lot 59 of Tract 13316 in the city of Rancho Cucamonga, County of San Bernardino, State of California as per plat recorded in book 235 of Maps page(s) 43 to 50 inclusive in the office of the County Recorder of said County.

Parcel ID Number: 1074-461-10                   which currently has the address of
            4930 SADDLEWOOD PLACE, RANCHO CUCAMONGA               ,
                                  [Street/City]

California    91737      ("Property Address"):
              [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

Initials: _____

VMP®  -6A(CA) (0207)      CHL (09/02)         Page 3 of 16                    Form 3005  1/01

EXHIBIT 2    PAGE 3

DOC ID #: 0001015717150005

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

VMP®-6A(CA) (0207)        CHL (09/02)              Page 4 of 16                    Initials: _____        Form 3005 1/01

DOC ID #: 0001015717150505005

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

Initials: _____

-6A(CA) (0207)     CHL (09/02)          Page 5 of 16                          Form 3005 1/01

DOC ID #: 0010157171505005

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

Initials: _____

VMP®-6A(CA) (0207)    CHL (09/02)    Page 6 of 16    Form 3005  1/01

DOC ID #: 0001015717150500 5

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

EXHIBIT 2     PAGE 7

DOC ID #: 0001015717150505005

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

EXHIBIT 2     PAGE 8

DOC ID #: 00010157171505005

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

Initials: _____

VMP®  -6A(CA) (0207)          CHL (09/02)               Page 9 of 16                              Form 3005  1/01

DOC ID #: 00010157171505005

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

VMP®  -6A(CA) (0207)      CHL (09/02)            Page 10 of 16              Initials: _____      Form 3005  1/01

DOC ID #: 00010157171505005

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

Initials: _____

-6A(CA) (0207)        CHL (09/02)        Page 11 of 16        Form 3005  1/01

DOC ID #: 00010157171505005

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

DOC ID #: 00010157171505005

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

    **21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

    Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

    Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

    NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

    **22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

<span style="float:right">Initials: _____</span>

Ⓥᴹᴾ ® -6A(CA) (0207)    **CHL (09/02)**        Page 13 of 16                **Form 3005  1/01**

DOC ID #: 00010157171505005

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

*VMP* -6A(CA) (0207)          CHL (09/02)          Page 14 of 16          Initials: _____          **Form 3005** 1/01

DOC ID #: 00010157171505005

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                    HEATH CARR                        -Borrower

_____          _____ (Seal)
                                                                      -Borrower

                                    _____ (Seal)
                                                                      -Borrower

                                    _____ (Seal)
                                                                      -Borrower

VMP®-6A(CA) (0207)        CHL (09/02)          Page 15 of 16                    Form 3005  1/01

DOC ID #: 00010157171505005

State of California
County of San Bernardino } ss.

On May 13 2005 before me, Stephanie Johnson personally appeared

Heath Carr

, ~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity(ies), and that by his/~~her/their~~ signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)



STEPHANIE JOHNSON
Commission # 1397683
Notary Public - California
San Bernardino County
My Comm. Expires Feb 2, 2007

Initials: ____

-6A(CA) (0207)    CHL (09/02)    Page 16 of 16    Form 3005  1/01

Assessor's Parcel Number:

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.


MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
ANN EASTERBROOK

Recording Requested By:

―――――――――――[Space Above This Line For Recording Data]――――――――――――

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

4378-SJ                      00010157171505005
[Escrow/Closing #]          [Doc ID #]

CONV
* MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/04)(d)                Page 1 of 5                    Initials:

DOC ID #: 00010157171505005

THIS FIXED/ADJUSTABLE RATE RIDER is made this NINTH           day of
MAY, 2005           , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
AMERICA'S WHOLESALE LENDER

("Lender") of the same date and covering the property described in the Security Instrument and
located at:

4930 SADDLEWOOD PLACE
RANCHO CUCAMONGA, CA 91737
[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of       5.125 %. The Note also provides
for a change in the initial fixed rate to an adjustable interest rate, as follows:
**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the
first           day of JUNE, 2010           , and the adjustable interest rate I will pay
may change on that day every 12th month thereafter. The date on which my initial fixed interest rate
changes to an adjustable interest rate, and each date on which my adjustable interest rate could
change, is called a "Change Date."
**(B) The Index**
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The
"Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the
London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure
available as of the date 45 days before each Change Date is called the "Current Index".
If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO & ONE-QUARTER           percentage points (      2.250 %) to the Current Index.
the Note Holder will then round the result of this addition to the nearest one-eighth of one percentage
point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new
interest rate until the next Change Date.

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/04)                    Page 2 of 5                    Initials:_____

DOC ID #: 0001015717150 5005

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.125 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.125 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
   INTEREST ONLY
1U796-XX (06/04)                    Page 3 of 5                              Initials: _____

EXHIBIT 2    PAGE 19

DOC ID #: 00010157171505005

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

CONV
MULTISTATE  FIXED/ADJUSTABLE  RATE  RIDER - WSJ One-Year  LIBOR - Single Family
INTEREST ONLY
1U796-XX (06/04)                    Page 4 of 5                    Initials: _____

DOC ID #: 00010157171505005

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
HEATH CARR                                              -Borrower

_____ (Seal)
                                                        -Borrower

_____ (Seal)
                                                        -Borrower

_____ (Seal)
                                                        -Borrower

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
1U796-XX (06/04)                    Page 5 of 5

EXHIBIT 2    PAGE 21

# EXHIBIT 3

# TICOR TITLE
## SAN BERNARDINO

Recording Requested By:
TMG FINANCIAL SERVICES INC., DBA THE MORTGAGE
GUILD ATTN: SHIPPING DEPARTMENT

Return To:
TMG FINANCIAL SERVICES INC., DBA THE MORTGAGE
GUILD
43385 BUSINESS PARK DRIVE STE. 140
TEMECULA, CA 92590

Prepared By:

TMG FINANCIAL SERVICES INC.
43385 BUSINESS PARK DRIVE STE. 140
TEMECULA, CA 92590
951-491-6471
LOAN NO.: 0000010719
ESCROW NO.: 06-10343CC

MIN: 100382800000107192
MERS Phone: 1-888-679-6377

Electronically Recorded in Official Records, County of San Bernardino     8/25/2006
    10:23 AM
    MA


**LARRY WALKER**
Auditor/Controller - Recorder

**850 Ticor Title Company**

Doc #:   **2006-0583487**     Titles:   1    Pages:   8

| | |
|---|---|
| Fees | 29.00 |
| Taxes | .00 |
| Other | .00 |
| PAID | 29.00 |

# DEED OF TRUST ~~AND REQUEST FOR NOTICE OF DEFAULT~~

THIS DEED OF TRUST is made this    17th    day of    AUGUST, 2006     , among the Trustor,
HEATH CARR, A SINGLE MAN

whose address is
4930 SADDLEWOOD PLACE, RANCHO CUCAMONGA, CA 91737     (herein "Borrower"),
TICOR TITLE COMPANY
    (herein "Trustee"), and the Beneficiary,
Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's
successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number
of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
TMG FINANCIAL SERVICES INC., DBA THE MORTGAGE GUILD

    ("Lender")
is organized and existing under the laws of    CALIFORNIA     , and has an address of
43385 BUSINESS PARK DRIVE STE. 140, TEMECULA, CA 92590

    BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and
conveys to Trustee, in trust, with power of sale, the following described property located in the County of
   SAN BERNARDINO     , State of California:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF. ......AND BEING MORE
PARTICULARLY DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: PARCEL NO.: 1074-461-10-0-000     which has the address of
    4930 SADDLEWOOD PLACE
            [Street]
RANCHO CUCAMONGA     [City], California     91737    [ZIP Code] (herein "Property Address");

Initials: _____

| CALIFORNIA – SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS | Form 3805 Amended 9/99 |
|---|---|

V-76N(CA) (0510)      Page 1 of 7      LENDER SUPPORT SYSTEMS INC. 2ND76NCA.NEW (02/06)

8

EXHIBIT 3     PAGE 1

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Deed of Trust.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated
AUGUST 17, 2006              and extensions and renewals thereof (herein "Note"), in the principal sum of
U.S. $        150,000.00        , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on        SEPTEMBER 01, 2036        ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

V-76N(CA) (0510)                              Page 2 of 7                              Initials: _____
                                                                                       Form 3805

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

6.  **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7.  **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8.  **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9.  **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

10.  **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11.  **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

12.  **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13.  **Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict

Initials: _____

V-76N(CA) (0510)                          Page 3 of 7                          Form 3805

EXHIBIT 3    PAGE 3

shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and this Deed of Trust at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender, prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees;

EXHIBIT 3    PAGE 4

and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. **Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

21. **Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. The procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

22. **Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

23. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

REQUEST FOR NOTICE OF DEFAULT
—————————— AND FORECLOSURE UNDER SUPERIOR ——————————
MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other/foreclosure action.

In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded                              , in Book
              , Page              , records of    SAN BERNARDINO                                   County,
or filed for record with recorder's serial number              ,              SAN BERNARDINO
County,    CALIFORNIA              , executed by

as trustor (or mortgagor) in which                                                  is named

as beneficiary (or mortgagee) and                                                  as trustee

be mailed to
at

Initials: _____

V-76N(CA) (0510)                    Page 5 of 7                    Form 3805

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

_____
Lender Representative

State of California
County of
On                                    , before me
                                                        , personally appeared

                                                        , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_____(Seal)          _____(Seal)
HEATH CARR                    -Borrower                                    -Borrower

_____(Seal)          _____(Seal)
                              -Borrower                                    -Borrower

_____(Seal)          _____(Seal)
                              -Borrower                                    -Borrower

_____(Seal)          _____(Seal)
                              -Borrower                                    -Borrower

[Sign Original Only]

V-76N(CA) (0510)                          Page 6 of 7                          Form 3805

State of   CALIFORNIA
County of  SAN BERNARDINO
On AUGUST 19, 2006                , before me  GEORGE RUIZ, NOTARY PUBLIC
                                                                    , personally appeared

HEATH CARR
                                                        , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

WITNESS my hand and official seal.

GEORGE RUIZ
Commission # 1524866
Notary Public - California
San Bernardino County
My Comm. Expires Nov 6, 2008

V-76N(CA) (0510)                        Page 7 of 7                            Initials:
                                                                                Form 3805

## Schedule A

LOT 59 OF TRACT NO. 13316, IN THE CITY OF RANCHO CUCAMONGA, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS PER PLAT RECORDED IN BOOK 235 OF MAPS, PAGES 43 TO 50, INCLUSIVE, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

# EXHIBIT 4

RECORDING REQUESTED BY:

Heath Carr
4930 Saddlewood Pl
Rancho Cucamonga, CA 91737-1651

WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO

Jamie L. Gbur
4930 Saddlewood Pl
Rancho Cucamonga, CA 91737-1651

Recorded in Official Records, County of San Bernardino    4/19/2017
                                                           3:45 PM
**BOB DUTTON**                                             SG
ASSESSOR – RECORDER – CLERK                                SAN

P Counter

Doc#:  **2017 – 0162699**



| Titles: | 1 | Pages: | 2 |
|---|---|---|---|
| Fees | | | 18.00 |
| Taxes | | | 418.00 |
| Other | | | 0.00 |
| PAID | | | $436.00 |

Above this Line for Recorders Use Only

## QUITCLAIM DEED

APN: 1074-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

The undersigned, Heath Carr, declares that the document transfer tax is: $418.00 computed on the full value less the value of liens or encumbrances remaining thereon at the time of sale.

For valuable consideration, receipt of which is hereby acknowledged,

**Heath Carr, an unmarried man**

hereby REMISE(S), RELEASE(S) AND FOREVER QUITCLAIM(S) to:

**Jamie L. Gbur, an unmarried woman**

the following described real property in the City of Rancho Cucamonga, County of San Bernardino, State of California described as follows:

LOT 59 OF TRACT NO. 13316 IN THE CITY OF RANCHO CUCAMONGA, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS PER PLAT RECORDED IN BOOK 235 OF MAPS, PAGES 43 TO 50, INCLUSIVE, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Commonly known as: 4930 Saddlewood Place, Rancho Cucamonga, CA 91737.

Date: April 19, 2017

Heath Carr

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached and not the truthfulness, accuracy, or validity of that document.

State of California        )
County of San Bernardino   )

On _04/19_____ 2017, before me, _Tierra Powell_____, Notary Public, personally appeared, Heath Carr, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the instrument in his/her/their authorized capacit(y/ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity on behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

TIERRA POWELL
COMM. # 2152326
NOTARY PUBLIC - CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires May 7, 2020

Page **2** of **2**

# EXHIBIT 5

Case 6:17-bk-14622-WJ    Doc 1    Filed 06/01/17    Entered 06/01/17 11:29:48    Desc
Main Document        Page 41 of 53

Debtor 1    **Heath Carr**

Case number *(if known)*

| Person Who Received Transfer Address | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|
| Person's relationship to you | | | |
| **Jamie Gbur**<br>**4930 Saddlewood Pl.**<br>**Rancho Cucamonga, CA 91737**<br><br>**mother of children** | **Debtor transferred ownership of Cannagro Consulting, Inc, which owned a bank account with $50,000.00, Cannon Trading account with a value of $20,000.00, and $30,000.00 from a Chase bank account for a total of $100,000.00 to the mother of his children to partially satisfy child support arrears.** | | **April 2017** |

19. **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** *(These are often called asset-protection devices.)*

- ■ No
- ☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
|---|---|---|

**Part 8:**    List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units

20. **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

- ■ No
- ☐ Yes. Fill in the details.

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

21. **Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**

- ■ No
- ☐ Yes. Fill in the details.

| Name of Financial Institution Address (Number, Street, City, State and ZIP Code) | Who else had access to it? Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

22. **Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?**

- ■ No
- ☐ Yes. Fill in the details.

| Name of Storage Facility Address (Number, Street, City, State and ZIP Code) | Who else has or had access to it? Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

**EXHIBIT 5    PAGE 1**

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>HOWARD B. GROBSTEIN, Chapter 7 Trustee | **DEFENDANTS**<br>JAMIE L. GBUR |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>LOBEL WEILAND GOLDEN FRIEDMAN LLP<br>650 Town Center Drive, Suite 950, Costa Mesa, CA 92626<br>Telephone: (714) 966-1000 | **ATTORNEYS** (If Known) |

**PARTY** (Check One Box Only)
☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor   ☐ Other
■ Trustee

**PARTY** (Check One Box Only)
☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor   ■ Other
☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

(1) To Avoid and Recover Fraudulent Transfer Pursuant to 11 U.S.C. §§548(a)(1)(A) and 550; (2) To Avoid and Recover Fraudulent Transfer Pursuant to 11 U.S.C. §§548(a)(1)(B) and 550; (3) To Avoid and Recover Preferential Transfer Pursuant to 11 U.S.C. §§547(b) and 550; (4) To Preserve Transfer Pursuant to 11 U.S.C. §551; (4) For Declaratory Relief; (5) For Imposition of Resulting Trust; (6) For Imposition of Constructive Trust; and (7) For Attorneys' Fees and Costs

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Heath Carr | BANKRUPTCY CASE NO.<br>6:17-bk-14622-WJ | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Riverside | NAME OF JUDGE<br>Hon. Wayne Johnson |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Reem J. Bello | | |
| DATE<br>November 6, 2017 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Reem J. Bello | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.